UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON

| | |
|---|---|
| Caterpillar Financial Services Corporation<br>Plaintiff,<br><br>vs.<br><br>Offshore Marine Contractors, Inc.<br>Defendant. | Civil Action No. 4:19-CV-3750<br><br>**IN ADMIRALTY** |

## VERIFIED COMPLAINT

Plaintiff, Caterpillar Financial Services Corporation ("Plaintiff" or "Caterpillar") files this Verified Complaint against Defendant Offshore Marine Contractors, Inc. ("OMC" or "Defendant") and respectfully shows the court as follows:

### PARTIES

1. Plaintiff, Caterpillar Financial Services Corporation ("Caterpillar"), is a Delaware corporation having its principal place of business in Tennessee and is doing business in the State of Texas.

2. Defendant OMC is a Louisiana corporation having its principal place of business at 133 W. 113th Street, Cut off, Louisiana 70345. OMC has not filed an application for registration with the Texas Secretary of State as a foreign entity transacting business in Texas pursuant to Texas Business Organizations code, Title 1, Chapter 9 (Tex. Bus. Orgs. Code §§9.001 *et seq*.). OMC is the successor in interest to Glencoe, Inc., the original mortgagor of the Vessel pursuant to the Articles of Merger dated April 28, 2015 (*see* Caterpillar's Complaint in the underlying litigation filed in the U.S. District Court for the Eastern District of Louisiana, Civil Action No. 19-855, attached herein as **Exhibit A**, at Ex. 1.) ("Underlying Litigation").

-2-

OMC is the owner of the vessel L/B RAIMY EYMARD, bearing Official No. 1249839 and IMO No. 9696125 (the "Vessel").

3. Garnishee, Arena Offshore, LP, ("Garnishee" or "Arena") is a Delaware Limited Partnership authorized to do business in the state of Texas and located at 4200 Research Forest Drive, Suite 230, The Woodlands, TX 77381.

## JURISDICTION AND VENUE

4. This is an admiralty and maritime claim within the Court's jurisdiction pursuant to U.S.C. § 1333, and within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure; and Plaintiff further invokes the maritime procedures and special relief provided for in Rule B and Rule E of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure for the garnishment and attachment of Defendant's property in the hands of Garnishee Arena.

5. Jurisdiction and venue are proper in this Court pursuant to Rule B of the Supplemental Rules for Admiralty and Maritime Claims because, as more fully pled below, Defendant cannot be found within the Southern District of Texas; Plaintiff has a maritime lien against the Vessel, along with her engines, boilers, apparels, etc. arising out of its promissory note, loan agreement, and first ranking preferred ship mortgage against the Vessel, OMC, and the Guarantors; and Plaintiff is seeking to attach Defendant's property within this District to obtain security for its *in personam* maritime claims pending in the United States District Court for the Eastern District of Louisiana as set forth more fully herein. *See Agrocooperative Ltd. V. Sonangol Shipping Angl. (Luanda) Limitada*, No. H-14-1707, 2014 U.S. Dist. LEXIS 179874, at *16 (S.D. Tex. Dec. 15, 2014).

6. Jurisdiction over the Garnishee Arena is sufficient for this Court to issue a Rule B attachment order to seize and attach property pursuant to Rule E belonging to Defendant in the possession of Arena. *See Stena Rederi AB v. Comision de Contraros del Comite Ejecutivo General del Sindicato revolucionario de Trabaidores Petroleros de la Republica Mexicana, S.C.*, 923 F.2d 380, 391 (5th Cir. 1991) ("In garnishment cases, the court may exercise quasi in rem jurisdiction to the extent that it has jurisdiction 'over a person who is indebted to or owes a duty to the defendant.'") (quoting *Belcher Co. of Alabama, Inc. v. M/V Maratha Mariner*, 724 F.2d 1161, 1163–64 (5th Cir. 1984)).

## FACTUAL ALLEGATIONS

7. Caterpillar is the owner and holder of the Permanent Loan Note dated November 11, 2013 in the principal amount of $10,332,000.00 (the "Loan"), made payable by OMC to the order of Caterpillar, with principal, interest, attorneys' fees and costs as set forth more fully therein. Under the Permanent Loan Note, OMC is obligated to repay the Loan in monthly installments of principal and interest becoming due in full on March 1, 2018. *See* Caterpillar's Verified Complaint *In Rem* and *In Personam* to Enforce Permanent Loan Note, Loan Agreement, and First Preferred Ship Mortgage, attached as **Exhibit A**, and incorporated herein by reference.

8. OMC also entered into a Loan Agreement with Caterpillar on November 26, 2012, which was Amended in conjunction with the Permanent Loan Note on or about November 11, 2013 (collectively, the "Loan Agreement"). *See id.*

9. To secure payment of all sums due under the Permanent Loan Note and Loan Agreement, OMC, as mortgagor, duly executed and delivered to Caterpillar, as mortgagee, a first preferred ship mortgage dated November 11, 2013 (the "Preferred Ship Mortgage") on the

Vessel, her engines, boilers, tackle, apparel, etc. securing the sum of $10,332,000, all as more fully described therein. *See id.*

10. The Preferred Ship Mortgage was received for recordation by the U.S. Coast Guard at the National Vessel Document Center on or about November 13, 2013, and recorded in Batch Number 15676400, Document ID Number 2. Recordation of the Preferred Ship Mortgage is evidenced in the Abstract of Title dated January 29, 2019. *See id.* at Ex. 5.

11. At the time the Preferred Ship Mortgage was executed, the Vessel was, and still remains, duly licensed and enrolled under the laws of the United States, having its home in port in New Orleans, Louisiana. *See id.*

12. All of the acts and things required to be done by 46 U.S.C. § 31322 in order to give the Preferred Ship Mortgage the status of a first preferred ship mortgage and ranking maritime lien, were done or caused to be done, by Caterpillar or by the U.S. Coast Guard. *See id.*

13. OMC was obligated to repay the Loan in full to Caterpillar on March 1, 2018. OMC has failed to repay the Loan in full, and therefore, is in default of the Permanent Loan Note and Loan Agreement. The balance due on the Permanent Loan Note as of September 17, 2019 is $7,950,963.60, plus interest, attorneys' fees and costs (all of which continue to accrue). *See* Affidavit of Amounts Due, attached as **Exhibit I**.

14. Section 7.01(a) of the Loan Agreement defines an "Event of Default," as default by OMC "in the payment of any principal or interest hereunder, or on any Note or any other Obligation when it becomes due hereunder or under any Note or any other Loan Documents (whether at maturity, by reason of notice of prepayment or acceleration or otherwise)". *See id.* at Ex. 3, § 7.01.

15. The Loan Agreement further provides that in the event that any installment on the Permanent Loan Note is not paid when due, Caterpillar "shall further have the right, at its sole option, to accelerate the maturity and insist upon immediate payment in full of the unpaid principal balance and all accrued interest then outstanding under the Loan (including additional interest accrued on past due payments and any prepayment premium, as provided herein), together with Lender's legal fees, costs, expenses and other fees and charges, as provided herein." *See id.* at Ex. 3, § 7.03.

16. Because OMC has failed to repay the Loan in full on March 1, 2018, Caterpillar has declared and does hereby further declared OMC to be in default of its payment obligations under the Permanent Loan Note, Loan Agreement, and Preferred Ship Mortgage. The balance due on the Permanent Loan Agreement as of September 17, 2019 is $7,950,963.60 plus interest, attorneys' fees, and costs (which continue to accrue). *See* **Exhibit I.**

17. Under the Preferred Ship Mortgage, Caterpillar is authorized to "[e]xercise all of the rights and remedies in foreclosure or public or private sale and otherwise given to mortgagees or secured parties by laws of the United States of America or other applicable provisions of law, including but not limited to, the Ship Mortgage Act of 1990 (46 U.S.C. §30101 *et seq.*) and the law (including the Uniform Commercial Code) of any jurisdiction in which the Vessel may be found; to bring suit at law, in equity or admiralty, at its discretion, to recover judgment for the Obligations, *in rem* or *in personam* and seek collection and satisfaction of same." *See id.* at Ex. 4, at Article 9 (i).

18. Further, Caterpillar is authorized under the Preferred Ship Mortgage to "[t]ake and enter into possession of the Vessel at any time wherever the same may be, without legal

process," and OMC is obligated "upon demand of [Caterpillar] [to] surrender to [Caterpillar] possession of the Vessel" at no cost to Caterpillar." *See id.* at Ex. 4, at Article 9(ii)-(iii).

19. Additionally, Caterpillar is authorized under the Preferred Ship Mortgage to "collect and retain all hire, freights, earnings, issues, revenues, income, profits, return of premiums… and all other sums due or to become due in respect to the Vessel … from any person whomsoever" to satisfy the unpaid debt (*id*. Ex. 4 at Article 9(ii)); and to "[e]xercise all rights, privileges and remedies in foreclosure or otherwise given the [Caterpillar] by any other instrument securing" OMC's debt obligations to Caterpillar (*id*. Ex. 4 at Article 9(iv)), which includes the right under the Loan Agreement to "demand, collect, receive, compromise and sure for… all freight, hire, earnings, issues, revenues, income and profits of the Vessel … and all other sums thereafter due or to become due in respect of the Vessel… from any person whomsoever" (*id*. Ex. 3, Article 12).

<u>Underlying Litigation and Expired Forbearance Agreement</u>

20. Because OMC is in default under the Permanent Loan Note, Loan Agreement and Preferred Ship Mortgage, Caterpillar is seeking a judgment rendered against the Vessel, OMC, and Guarantors for all sums due under the Loan, and to have the Vessel seized, and sold at a judicial sale to be conducted by the United States Marshal, and have the proceeds of such sale distributed to Caterpillar. *See id.*

21. Caterpillar filed the Underlying Litigation in the Eastern District of Louisiana on February 4, 2019. Subsequently, on February 5, 2019 the Eastern District of Louisiana signed an Order granting Caterpillar's Motion for Issuance of Warrant *in rem* and a Warrant for the seizure of the Vessel. *See* Order Granting Caterpillar's Motion for Issuance of Warrant *in rem* attached as **Exhibit B** and Warrant of Vessel Seizure attached as **Exhibit C.** The United States Marshal

was at this time (and remains) unable to serve the Warrant of Vessel Seizure because the vessel was offshore. On information and belief, Caterpillar believes that OMC has endeavored to keep the vessel offshore, only returning in the middle of night and on weekends when the United States Marshal will not serve the arrest warrant, to avoid service of the vessel arrest warrant and the *in rem* jurisdiction of the Eastern District of Louisiana over the Vessel.

22. During the pendency of the Underlying Litigation, Caterpillar entered into a Forbearance Agreement with OMC (*inter alia*) in an effort to afford additional time for OMC to pay its debts to Caterpillar in full on or before June 30, 2019 (which deadline was extended through July 31, 2019); and agreed in the Forbearance Agreement that it would voluntarily relinquish the Vessel to the possession of Caterpillar if the debt was not timely paid in full as required by the Forbearance Agreement. *See* Underlying Litigation, Doc. No. 18-9.

23. However, OMC has failed to pay its indebtedness to Caterpillar as required by the Forbearance Agreement (as well as the Permanent Loan Note, Loan Agreement, and Preferred Ship Mortgage); has likewise refused voluntary relinquishment of the Vessel as required by the Forbearance Agreement (as well as the Permanent Loan Note, Loan Agreement, and Preferred Ship Mortgage); and continues to avoid service by the U.S. Marshal of the arrest warrant issued in the Underlying Litigation by keeping the Vessel offshore.

24. Caterpillar has sought default judgment against OMC in the Underlying Litigation as OMC has not answered or otherwise appeared to respond thereto. *See* Underlying Litigation at Doc. No. 18.

25. Due to OMC's defaults, the balance due and owing on the Permanent Loan Note and Loan Agreement as of September 17, 2019 is $7,950,963.60 plus interest, attorneys' fees, and costs (which continue to accrue). *See* **Exhibit I**.

<u>OMC's Assets Present in Houston, Texas.</u>

26. Caterpillar has investigated OMC's regular business activities. These investigations have provided Caterpillar with information that debts are due and owing by Garnishee Arena, to OMC. Based on Caterpillar's investigation, the Vessel at issue has been continuously chartered since February 5, 2015 by Arena under a Master Time Charter agreement between Arena and OMC. *See* Master Time Charter Agreement attached as **Exhibit E** and communications from Arena to Caterpillar's Counsel attached as **Exhibit F**. On information and belief, Arena presently owes OMC debts totaling $582,099.04 as of September 24, 2019 under this Master Time Charter Agreement, as well as additional charter hire amounts that have accrued and will continue to accrue as the Vessel remains working for Arena pursuant to the Master Time Charter Agreement. *See* Proofs of Payment from Arena to OMC, attached as **Exhibit G.**

27. Under the terms of the Permanent Loan Note, Loan Agreement, and Preferred Ship Mortgage (as set forth at ¶ 19 *supra*) Caterpillar is entitled to demand, collect, receive and retain these charter hire amounts and all other sums due or to become due in respect to the Vessel and owed by Arena to OMC.

**CLAIM FOR RULE B GARNISHMENT AND ATTACHMENT**

28. Caterpillar incorporates and realleges paragraphs 1 through 27 herein by reference.

29. OMC and Guarantors are not present and cannot be found in the Southern District of Texas within the meaning of Rule B of the Supplemental Rules for Certain Admiralty or Maritime Claims; however, property belonging to OMC, namely debts owed by Arena under the

Master Time Charter between OMC and Arena are and will be at all pertinent times within the Southern District of Texas. *See* Declaration attached as **Exhibit D**.

30. OMC is believed to have certain intangible personal property, namely debts owed by Arena in the Southern District of Texas, which is subject to Rule B attachment as security for Plaintiff's maritime claims in the Underlying Litigation; and which Caterpillar is contractually entitled (pursuant to the Permanent Loan Note, Loan Agreement, and Preferred Ship Mortgage) to demand, collect, receive and retain from Arena. A copy of the outstanding invoices from OMC to Arena evidencing debts/monies owed from Arena to OMC, and a summary of the outstanding invoices, are attached as **Exhibits H and G respectively**. Moreover, additional amounts owed from Arena to OMC are and/or will become due during the pendency of these proceedings pursuant to the terms of the Master Time Charter (Exhibit E).

31. Because this Verified Complaint sets forth a valid *in personam* maritime claim against OMC, a defendant that cannot be found within the District, the requirements for a Rule B Garnishment and Attachment of the monies owed by Arena to OMC are met.

32. Further, Plaintiff seeks attachment of monies owed by Arena to OMC pursuant to Rule B and Rule E of the Supplemental Rules for Admiralty and Maritime Claims and Asset Forfeiture Actions, for the purpose of obtaining security for its *in personam* maritime claims against OMC in the Underlying Litigation.

## ALLEGATIONS REGARDING APPLICABLE LAW AND FORUM

33. Plaintiff affirmatively acknowledge that the merits of its underlying action against the Vessel and Defendants are governed by U.S. maritime law and further that the U.S. District Court for the Eastern District of Louisiana is the appropriate venue for Plaintiff's claims against the Vessel, OMC, and Guarantors. Nonetheless, given OMC's avoidance of service of the arrest

warrant for the Vessel precluding *in rem* jurisdiction over the Vessel, and Plaintiff's resulting inability to perfect *in rem* jurisdiction over the Vessel to obtain contractually and statutorily guaranteed security for its claims, Plaintiff invokes this Court's admiralty and maritime jurisdiction, as well as the maritime procedures and special relief provided for in Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, for the garnishment of the debts owed to OMC by Arena and to secure its *in personam* claims against OMC and Guarantor.

## CONCLUSION AND PRAYER

34. Wherefore, Plaintiff, Caterpillar Financial Services Corporation, prays:

a. That process in due form of law, according to the practice of this Honorable Court in cases of admiralty and maritime jurisdiction, issue against the Defendants, citing them to appear and answer under oath all the matters alleged in this Verified Complaint;

b. That this Court enter an Order authorizing the Issuance of Process of Maritime Attachment and Garnishment directing any and all garnishees to garnish any tangible or intangible personal property in their possession, custody, or control belonging to the Defendant;

c. And to grant Plaintiff such other and further relief as may be just, equitable and proper.

09/30/2019

> BAKER DONELSON BEARMAN
> CALDWELL & BERKOWITZ, PC
>
> By: */s/ Katriel C. Statman*
>    Katriel C. Statman
>    Texas State Bar No.: 24093197
>    Federal ID No.: 2513924
>    ktsatman@bakerdonelson.com
>    1301 McKinney Street, Suite 3700
>    Houston, Texas 77010
>    Telephone: 713.650.9700
>    Facsimile: 713.650.9701
>
> OF COUNSEL (*pro hac vice* admission pending)

-11-

                    Christopher M. Hannan
                    Louisiana State Bar No. 31765
                    channan@bakerdonelson.com
                    201 St. Charles Avenue, Suite 3600
                    New Orleans, Louisiana   70170
                    Telephone:  (504) 566-5200
                    Facsimile:  (504) 636-4000